IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANE RYAN WOMACK,

                Plaintiff,

      v.

BRANDON KELLY, Superintendent,
Oregon Department of Corrections,
in his individual and official
capacities; and RONNIE FOSS,
Hearings Officer, Oregon Department
of Corrections, in her individual
and official capacities,

                Defendants.

Case No. 6:19-cv-00686-JR

OPINION AND ORDER

RUSSO, Magistrate Judge.

       Plaintiff, an adult in custody at the Coffee Creek Correctional Facility ("CCCF") brings this civil rights action pursuant to 42 U.S.C. § 1983 *pro se*.[1]   Currently before the Court is defendants' Motion for Judgment on the Pleadings (ECF No. 20).   All parties have consented to

---

[1]Plaintiff is a transgender woman who uses feminine pronouns.   In accordance with plaintiff's identity and preference, the Court will do the same.

allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).  For the reasons that follow, the court GRANTS defendants' Motion.

## **BACKGROUND**

Plaintiff alleges that on February 7, 2018, she received a misconduct report charging her with violation of prison rules prohibiting contraband.[2]  The misconduct report alleged:

> On 1-16-2018 Inmate Womack's cell was searched by Cpl. Roberts and he confiscated multiple unauthorized items of clothing, make-up and undergarments. These items were collected as evidence and photographed (Photos attached with investigative report).  When interviewed, Inmate Womack identified the following items as belonging to her 1 Blue V Neck T-Shirt, 1 pair Jordache Jean Size 10, 1 White Make Up Brush, 1 Royal Hair Brush, 1 Pink Comb, 1 White Sports Bra, 1 pair of Navy Blue underwear Commando Brand, and 1 pair of Blue with Green underwear with a Cat and the word Thursday.  She stated that she had received the unauthorized items from the inmates who worked in the OCE Laundry.   In this investigator's experience items received as gifts are most likely provided to the individual as items of barter or trade.

On February 13, 2018, defendant Foss conducted a disciplinary hearing.  Plaintiff testified that she received the unauthorized items from a transgender friend who worked for OCE Laundry at the Oregon State Penitentiary ("OSP") as a parting gift the day before that friend was released from custody, that there was no evidence that she obtained the unauthorized items through barter or trade or that she intended to use the items for the purpose of barter or trade, and that there was no market for the specific items due to the statewide adoption of the Alternative

---

[2]Specifically, plaintiff alleges she was charged with violating Rule 1.11 (Contraband 2), which states that an inmate commits Contraband II if he/she possesses contraband other than that listed in Contraband I and Contraband III and it creates a threat to the safety, security, or orderly operation of the facility, including but not limited to "items of barter (such as jewelry or canteen items not purchased by the inmate)."

Canteen List allowing transgendered inmates housed in male facilities to purchase gender-affirming clothing and cosmetics which allowed any inmate to legally purchase and own similar items.   Defendant Foss found plaintiff violated Rule 1.11 (Contraband 2) and sanctioned her with seven days in the Disciplinary Segregation Unit ("DSU") and ten days loss of privileges. Plaintiff alleges she asked defendant Kelly to review her case, but he approved the disciplinary finding and sanctions.

Plaintiff alleges defendants violated her Fourteenth Amendment right to due process and seeks declaratory relief and money damages.   She contends that, in addition to the specific sanctions imposed by defendant Foss, she suffered the loss of nine years of institutional clear conduct, the loss of her honor housing unit assignment, loss of her prison work assignment, and reduction in her incentive level status.

Defendants move for judgment on the pleadings for two reasons:   (1) defendants' conduct did not implicate plaintiff's due process rights as a matter of law because plaintiff does not allege infringement of a constitutionally protected liberty interest; and (2) defendants are entitled to qualified immunity from damages.   In response to defendants' Motion, plaintiff contends that she stated a due process claim without the need to allege infringement of a constitutionally protected liberty interest because defendants made disciplinary findings that were unsupported by any evidence.

## LEGAL STANDARDS

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c).   "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine

whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."

<u>Pit River Tribe v. Bureau of Land Mgmt.</u>, 793 F.3d 1147, 1155 (9th Cir. 2015) (citation and quotation marks omitted).  Accordingly, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."  <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir. 2001) (quotation marks omitted).

To survive a motion for judgment on the pleadings, "the non-conclusory 'factual content' [of the complaint]," and reasonable inferences from that content, "must be plausibly suggestive of a claim entitling the plaintiff to relief."  <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007).

## DISCUSSION

### I.  Plaintiff's Due Process Claim

As noted, plaintiff alleges defendants violated her due process rights by imposing sanctions when no evidence supported the violation of Rule 1.11 (Contraband 2).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  Instead, due process requirements are met if the inmate receives:  (1) advance written notice of the charges and the evidence against him; (2) an opportunity to present documentary

evidence and witnesses; (3) legal assistance if the charges are complex or the inmate is illiterate; (4) a written statement describing the reasons for the disciplinary action; and (5) a disciplinary decision supported by "some evidence" in the record.    Id. at 563-65, 566, 570; Superintendent v. Hill, 472 U.S. 445, 454-55 (1985).

Importantly, a prisoner is entitled to procedural due-process protections only when a disciplinary action "implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"    Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).    In determining whether a condition is "significant and atypical," the court must consider three things:    (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority;" (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action "will invariably affect the duration of the prisoner's sentence."    Brown v. ODOC, 751 F.3d 983, 987 (9th Cir. 2014) (quotation omitted).

There is no bright-line rule as to when the duration of a disciplinary segregation placement invokes a liberty interest.    See LaFleur v. Nooth, Case No.    2:12-cv-00637-SI, 2014 WL 1236138, at *4 (D. Or. March 25, 2014) (collecting cases and noting that placements from 40 days to 2.5 years had been found *not* to be "significant and atypical").    In any event, however, neither the Ninth Circuit nor the United States Supreme Court has ever held that a seven-day stay in segregation, standing alone, amounts to a "significant and atypical hardship."    Such a limited stay is not the type of "indefinite detention" that the Supreme Court finds gives rise to a protected

5  - OPINION AND ORDER

liberty interest.    See Wilkinson v. Austin, 545 U.S. 209, 210-11 (2005) (inmates remained indefinitely in isolated cells for 23 hours each day with virtually no human contact).    It is also not the type of indefinite detention that the Ninth Circuit has found "significant and atypical." See Brown, 751 F.3d at 988 (27 months in segregated housing); Smith v. Powell, Case No. 2:14-cv-01725-SB, 2016 WL 1183086 (D. Or. March 28, 2016) (120-day placement in disciplinary segregation), affirmed by Smith v. Powell, 693 Fed. Appx. 610 (9th Cir. 2017).

Here, plaintiff does not allege facts which plausibly demonstrate that her seven-day stay in DSU was atypical and significant.    Instead, plaintiff focuses on the collateral ramifications of the disciplinary finding on her access to programs and services, *i.e.*, the loss of her clear conduct record, the loss of her honor housing assignment, the loss of her inmate work assignment, the loss of privileges, and the reduction in her Incentive Level status.    These collateral ramifications, however, do not demonstrate that plaintiff's seven-day placement in DSU was a significant and atypical hardship implicating her due process rights because, as a matter of law, prisoners do not have any constitutionally protected liberty interests in a particular housing assignment, inmate work assignment, privileges, or incentive level.    See, e.g., Mora-Contreras v. Peters, Case No. 6:18-cv-00678-SB, 2019 WL 3979657, at *7 (D. Or. June 20, 2019) (placement in an honors housing unit not a constitutionally protected liberty interest, and loss of privileges does not constitute an atypical and significant hardship); Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (no due process property or liberty interest in prison employment); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (a prisoner has no constitutional right to a particular classification status).

As noted, plaintiff contends that because defendants made disciplinary findings that were unsupported by any evidence, she need not invoke a constitutionally protected liberty interest in order to state a claim.    In Burnsworth v. Gunderson, 179 F.3d 771, 774 (9th Cir. 1999), the Ninth Circuit recognized that a due process claim may be colorable, absent a cognizable liberty interest, when a prison disciplinary official finds a prisoner committed a disciplinary violation after a hearing "at which no shred of evidence of the inmate's guilt is presented."    In Burnsworth, the court emphasized that *no evidence whatsoever* supported the disciplinary finding; the defendants did not dispute that finding, but instead argued only that the lack of a cognizable liberty interest rendered plaintiff's claim untenable, which the court rejected.

Due process requires that "some evidence" support a prison disciplinary proceeding. Hill, 472 U.S. at 455-56.    The standard for the modicum of evidence required is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.    Id. at 455.    In making segregation decisions, prison administrators may rely on their "experience and awareness of general prison conditions" as evidence.    Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986) overruled in part on other grounds, Sandin, 515 U.S. 472.    In addition, "a reviewing court may not reverse the administration's decision" if it is supported by some evidence.    Id.    Furthermore, in applying the some evidence standard, a court is not required to "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.' "    Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (citing Hill, 472 U.S. at 455-456.)

Here, the relevant facts supplied in plaintiff's Complaint establish that defendant Foss relied upon "some evidence" to support her disciplinary finding.   Plaintiff admitted that the unauthorized items in question were given to her as a gift from another inmate.   Inspector Noack opined that in his experience as an investigator, items received as gifts are most likely provided to the individual as items of barter or trade.   At the disciplinary hearing, plaintiff testified that she received the unauthorized items from a transgendered friend who worked for OCE Laundry at OSP at a time when at least some of the items were not available for sale to the transgender population at OSP.

Plaintiff has not established that her claim falls into the class of claims identified in Burnsworth.    Moreover, because plaintiff does not allege facts supporting a claim that defendants infringed on any constitutionally protected liberty interest, her due process claim fails as a matter of law.

## II.    Defendant Kelly's Conduct

Plaintiff alleges defendant Kelly violated her rights in approving defendant Foss's disciplinary order and in failing to act on information plaintiff supplied to Kelly in an inmate communication form (kyte).   She alleges she sent defendant Kelly a kyte detailing her concerns with defendant Foss's order and that Kelly nonetheless approved the order without consideration of any of the representations plaintiff made in the kyte.

As the Court concluded above, defendant Foss's disciplinary findings were based on "some evidence," and plaintiff does not allege facts establishing that defendant Foss infringed on any constitutionally protected liberty interest.   In reviewing and approving defendant Foss's

order, defendant Kelly relied on the same set of evidence to make his decision.   As such, defendant Kelly did not violate plaintiff's due process rights.

To the extent plaintiff argues that defendant Kelly did not act upon the information plaintiff supplied to him in her kyte, the claim fails as a matter of law because "prisoners do not have a 'constitutional entitlement to a specific prison grievance procedure.'"   Fairley v. Shelton, 664 Fed. Appx. 616, 617 (9th Cir. 2016) (citation omitted); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure).   For these reasons, plaintiff does not state a due process claim upon which relief may be granted against defendant Kelly.

## III.    Qualified Immunity

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   To determine whether an official is entitled to qualified immunity, a court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.   Saucier v. Katz, 533 U.S. 194, 201-02 (2001); see also Pearson v. Callahan, 555 U.S. 223 (2009) (overruling Saucier's requirement that qualified immunity analysis proceed in a particular sequence).   "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."   Saucier, 533 U.S. at 201.

Here, plaintiff's Complaint does not allege facts sufficient to establish a violation of her due process rights under the Fourteenth Amendment.    Therefore, defendants prevail on the first prong of the <u>Saucier</u> test.    As a matter of law, defendants are entitled to qualified immunity.

## IV.    Leave to Amend

A court may grant leave to amend in response to a Rule 12(c) motion if the pleadings can be cured by further factual enhancement.    <u>See Sprint Telephony PCS, L.P. v. County of San Diego</u>, 311 F.Supp.2d 898, 903 (S.D.Cal. 2004) (because motions for judgment on the pleadings are analyzed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted, a court considering a motion for judgment on the pleadings may give leave to amend); <u>accord</u> <u>Lonberg v. City of Riverside</u>, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004); <u>Kemp v. Regents of University of Cal.</u>, No. C 09−4687−PJH, 2010 WL 2889224 at *2 (N.D. Cal. July 22, 2010) ("[b]ecause motions for judgment on the pleadings under Rule 12(c) and motions to dismiss for failure to state a claim under Rule 12(b)(6) are 'functionally identical' [citation omitted], leave to amend should be granted unless amendment would be futile.") (citing <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 247 (9th Cir.1990)); <u>see also</u> <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir.2001) ("[w]e consistently have held that leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'") (citation omitted).

Here, the court finds that plaintiff's Complaint may "possibly be cured by the allegation of other facts."    Although the Complaint establishes that "some evidence" supported the disciplinary finding, and plaintiff may be able to allege additional facts establishing that a

10  - OPINION AND ORDER

seven-day stay in the DSU was a significant and atypical hardship implicating her due process rights.   Accordingly, the Court grants plaintiff leave to file an amended complaint.

## CONCLUSION

For these reasons, the court GRANTS defendants' Motion for Judgment on the Pleadings (ECF No. 20), and GRANTS plaintiff leave to file an amended complaint.   Any amended complaint must be filed by June 12, 2020.

IT IS SO ORDERED.

DATED this 28th day of May, 2020.

 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

11  - OPINION AND ORDER